D. BLAKELY HOAR, assignee, *vs.* ALBERT C. TILDEN.

Suffolk.    January 11, 1901. — March 1, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

In this Commonwealth execution can be levied on real and personal property contemporaneously. Whether the levies properly can be made by different officers, *quære*.

A deputy sheriff seized on execution chattels of a debtor. The next day the debtor made a voluntary assignment for the benefit of creditors. A month later a judge of the Court of Insolvency appointed an assignee in insolvency of the debtor and executed an assignment to him of all the debtor's property; whereupon the assignee under the voluntary assignment surrendered to the assignee in insolvency all the property of the debtor which had come to his hands and all his rights under the first assignment. Between the times of the two assignments the deputy sheriff by agreement with the debtor permitted certain of the chattels he had seized on execution to be delivered to customers of the debtor and paid for on delivery, and then seized on execution the money paid by the customers. In an action by the assignee in insolvency against the deputy sheriff for conversion, it was *held*, that the levy on the money was good against the plaintiff, although the defendant's permitting the chattels to be turned into money might have defeated the original seizure of the chattels as against the assignee under the voluntary assignment, since the plaintiff's title rested on the assignment from the judge of the Court of Insolvency and did not date from the previous voluntary assignment which had been superseded and abandoned.

An attorney at law to whom one of his clients had made a general assignment for the benefit of creditors on March 30th was asked as a witness whether the as-

signor had not stated to him during the latter part of March that he did not own certain real-estate levied upon. This was objected to as calling for a privileged communication between attorney and client. *Held,* that it did not appear that the parties were acting at the time in the relation of attorney and client, as this statement might have been made on March 31st to give information to the assignee in regard to the property covered by the assignment.

An exception will not be sustained to the admission of evidence which could not have applied to any question submitted to the jury and therefore could not have harmed the excepting party.

TORT by an assignee in insolvency against a deputy sheriff for the alleged conversion of certain chattels and money seized on execution by the defendant. Writ dated May 15, 1897.

At the trial in the Superior Court, before *Blodgett,* J., the following facts appeared in evidence: In September, 1896, one Auffmordt and others brought an action of contract against one Mary E. Moore, and attached all her right, title and interest in any real estate in the county of Suffolk, and on the first Monday of March, 1897, recovered judgment in the action. On March 18, 1897, said Auffmordt and others, having obtained an execution in common form upon the judgment, placed it in the hands of Fred H. Seavey, a deputy sheriff, and directed him to levy it, in pursuance of the attachment, upon whatever right, title and interest Mary E. Moore had in a certain parcel of real estate. Seavey levied upon such right, title and interest, as she had, if any, and did all things necessary to perfect the levy. The time fixed for sale thereunder was May 1, 1897. On that day, at the request of the execution creditors, Seavey adjourned the sale, and thereafter again adjourned it by successive adjournments to the times and in the manner permitted by law, until November, 1897, when, by the creditors' direction, he discharged the levy and returned the execution to court in no part satisfied by him.

On March 29, 1897, the defendant, another deputy sheriff, by direction of the judgment creditors, given that day, and by virtue only of the same execution, seized the chattels in question, which were then subject to a prior attachment under a writ in his hands, subject to said attachment. The defendant then knew of the existing levy on real estate above mentioned.

On March 30, 1897, Mary E. Moore made a general assign-

ment of all her property, and particularly of the chattels seized on execution, for the benefit of such of her creditors as should assent thereto, to George D. Ayers, an attorney at law who was and had been for a long time her legal adviser, and to whom she was then indebted. This assignment contained a provision that the dividends thereunder should be paid pro rata to such creditors as assented thereto in satisfaction of their claims against the debtor, and that, in the event that the assignor was declared an insolvent debtor within four months, the assignee should give over the property assigned and its proceeds to her assignee in insolvency. Ayers executed this assignment by signing his name thereto and affixing his seal, undertook the trusts thereby imposed, and notified the defendant that he claimed the chattels subject to the levy.

Thereafter the defendant, by agreement with Mary E. Moore previously made, permitted certain of the chattels seized by him to be taken from him to be delivered to customers to be paid for on delivery, and thereafter on April 15, 1897, he according to this agreement seized on the execution $222 paid by the customers. The prior attachment above mentioned was discharged April 7, 1897.

On April 16, 1897, Mary E. Moore was declared to be an insolvent debtor by the Court of Insolvency of the County of Suffolk. On April 17, 1897, Moore notified the defendant that she claimed that the levy on her personal property was void. Thereafter, on April 29, 1897, the defendant sold the chattels seized by him other than those which had been delivered to customers, at public auction, for the sum of $1,235, pursuant to the levy.

On April 30, 1897, the plaintiff was appointed the assignee in insolvency of Mary E. Moore, and the judge of the Court of Insolvency executed to the plaintiff an assignment in due form of all the estate, real and personal, of Moore, except such as was by law exempt from attachment. Thereafter, Ayers surrendered to the plaintiff all the property of Moore which had come to his hands, and all his rights under said first assignment. Mary E. Moore subsequently died. This action was brought by the plaintiff to recover the value of the chattels sold at auction, and the $222.

At the trial, the defendant asked Ayers whether Moore had stated to him during the latter part of March, 1897, that she did not own the real estate levied upon. The plaintiff objected to this question on the ground that it called for a communication privileged because made by a client to her attorney. The judge ruled that the plaintiff could not set up this privilege, and ordered the question answered, and the plaintiff excepted. Ayers answered that Moore had so stated.

The plaintiff asked the judge to make the following rulings: 1. The plaintiff can recover $222. 2. The plaintiff can also recover the fair value of the goods sold at auction by the defendant.

The judge refused to give either ruling, and by his direction a verdict was entered for the defendant; and the plaintiff alleged exceptions, which, *Blodgett,* J., having resigned, were allowed by *Braley,* J.

*E. F. McClennen,* for the plaintiff.

*C. H. Sprague,* for the defendant.

KNOWLTON, J. The plaintiff rests his principal claim upon a contention that an officer, levying an execution on property of the debtor, cannot levy on real estate and personal chattels, and proceed to enforce the execution against both kinds of property at the same time. The English practice, under which a creditor in collecting a judgment must procure separate writs adapted to the enforcement of the judgment in different ways, — a *capias ad faciendum* if he would proceed against the body of the debtor, a *fieri facias* if he would levy upon chattels, and an *elegit* if he would take lands, — does not prevail in this Commonwealth. We have, instead, one form of execution in ordinary personal actions, which is framed in the alternative and leaves to the officer or to the creditor under whose direction he acts, a choice of methods for the service of it. This writ of execution commands the officer to levy upon the goods, chattels, lands and tenements of the debtor, and for want thereof, upon his body. The creditor cannot proceed under the execution against the property and against the body of the debtor at the same time. *Kennedy* v. *Duncklee,* 1 Gray, 65. *Dooley* v. *Cotton,* 3 Gray, 496. By the common law, the commitment of a judgment debtor in execution was a satisfaction of the judgment. But by our law

it is otherwise. *Twining* v. *Foot*, 5 Cush. 512. Pub. Sts. c. 162, § 47. The alternative rights of the creditor are two, one against the body, and one against the lands and chattels of the debtor. In *Dodge* v. *Doane*, 3 Cush. 460, 463, Mr. Justice Metcalf, speaking for the court, says, " It has never been doubted, but that a levy on land may be made for a balance left unsatisfied after a levy on goods and chattels, and *vice versa*, without taking out an *alias* execution. Such, for a long time, has been the practice." In like manner it has also been the practice to levy upon chattels and lands at the same time, and to proceed *pari passu* with the levies upon the different kinds of property until the execution is satisfied, or the property is all applied to the satisfaction of the judgment. There is no good reason for limiting a levy to one class of property until that is all absorbed, before taking property of the other class. Of course there can be but one satisfaction of the execution. We are of opinion, therefore, that the proceedings of the defendant in this particular were well warranted in law.

No question is raised growing out of the fact that the levy upon lands was by another officer than the defendant, and we do not see that the rights of the parties in the present case are affected by that fact. Complications might arise from an attempt of two officers to proceed under the same execution at the same time, which would be serious.

The other important question in the case relates to the levy upon money which was received by the defendant through an arrangement with the debtor as to the proceeds of property sold while held under the levy. As against Ayers, the assignee under the voluntary assignment, this exchange of goods for money through a delivery to customers who paid cash for them, might have been held to defeat the levy, because the officer allowed the goods to be turned into money in a manner not authorized by law, and because the consent of the debtor could not affect the rights of the assignee; but as against the plaintiff, holding as an assignee in insolvency under proceedings commenced subsequently to the levy on money, the money was lawfully levied on and appropriated. There is nothing to show that the defendant's title under the levy was founded in any part on an unlawful preference. By virtue of the levy he all the time had

a title which could not be affected by subsequent proceedings in insolvency.

The contention of the plaintiff on this part of the case is that he has all the rights which Ayers might have had if proceedings in insolvency had not intervened; but on the statement contained in the bill of exceptions we understand that the plaintiff's title rests on the assignment from the judge of insolvency, and that the previous voluntary assignment was superseded and abandoned on the appointment of an assignee in insolvency, and that it was not used as an instrument under which the assignee in insolvency was to take a title to property which would not pass by the appointment of the judge. The voluntary assignment might be treated as voidable as a preference on the commencement of insolvency proceedings within four months. *Steel Edge Stamping & Retinning Co.* v. *Manchester Savings Bank*, 163 Mass. 252. *White* v. *Hill*, 148 Mass. 396. *Morgan* v. *Abbott*, 148 Mass. 507. Apparently on this account the provision was inserted in the instrument, that in case of such proceedings, " the assignee should give over the property assigned and its proceeds to her assignee in insolvency." The bill of exceptions states that, after the assignment from the judge, ".Ayers surrendered to the plaintiff all the property of said Moore which had come to said Ayers, and all his rights under said first assignment." The language of the first assignment and the subsequent action of the first assignee, as stated in the bill of exceptions, imply an abandonment of the first assignment, rather than attempt to use it to create in the assignee in insolvency a title to property which he could not obtain by virtue of his appointment. As against the excepting party, we feel bound to give the exceptions this interpretation. It follows that the money was legally levied on by the defendant.

The exceptions to the admission of the testimony of what the debtor told Ayers during the latter part of March, 1897, may be overruled on different grounds. In the first place it does not appear that the parties were then acting in the relation of attorney and client. Ayers had taken an assignment of all the debtor's property on March 30, 1897, and this statement may have been made the next day, in reply to an inquiry as assignee to ascertain what property he held under the assignment. Sec-

ondly, no question was submitted to the jury to which the evidence could have been applied, and under the law, as rightly ruled by the judge, the whole subject was immaterial, and the plaintiff could not have been harmed by the testimony.

*Exceptions overruled.*